IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs at Jackson March 5, 2024

## STATE OF TENNESSEE v. NATHANIEL ISAAC HERRICK

**Appeal from the Criminal Court for Sullivan County**
**No. S67099    James F. Goodwin, Jr., Judge**

_____

### No. E2023-00984-CCA-R3-CD

_____

The Defendant, Nathaniel Isaac Herrick, appeals from the Sullivan County Criminal Court's probation revocation of his two-year sentence for drug-related convictions. On appeal, the Defendant contends that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his sentence in confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined.

Andrew Gibbons, District Public Defender; Mitchell A. Raines (on appeal), Assistant Public Defender-Appellate Division; and Melissa G. Owens (at plea and revocation hearing), Assistant Public Defender, for the appellant, Nathaniel Isaac Herrick.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Amber Massengill, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On September 13, 2016, the Sullivan County Grand Jury indicted the Defendant for three counts of the casual exchange of marijuana, two counts of the sale of more than one-half ounce of marijuana, two counts of the delivery of more than one-half ounce of marijuana, two counts of possession of drug paraphernalia, and one count each of possession of more than one-half ounce of marijuana for sale or delivery, possession of clonazepam, and maintaining a dwelling where controlled substances are used or sold. The Defendant pleaded guilty as charged and received an effective two-year sentence, suspended to supervised probation.

On September 19, 2019, a first probation violation warrant issued for the Defendant's two positive drug screens, failure to report, and failure to attend counseling. The trial court revoked the Defendant's probation and reinstated it after service of ninety days in confinement.

On April 28, 2020, the Defendant's probation officer submitted a probation violation report which stated that the Defendant had absconded. On May 4, 2020, a second probation violation warrant issued for the Defendant's missing two home visits by a probation officer. The Defendant was arrested on the second warrant on April 5, 2023, almost three years later.

At the June 7, 2023 probation violation hearing, Probation and Parole officer Cindy Brooks testified that the Defendant was placed on probation on March 16, 2018, that he performed well on probation for about one year, but that he failed to report to the probation office on July 18, 2019. She said that the Defendant also failed to report for a drug screen on July 23 and 24, 2019. She stated that on August 6, 2019, and September 10, 2019, the Defendant tested positive for a controlled substance. Ms. Brooks said that on August 6, 2019, the Defendant was ordered to begin mental health counseling but that he failed to do so. Ms. Brooks said that a probation violation warrant issued on September 19, 2019, and that the Defendant's probation was revoked and reinstated.

Ms. Brooks testified that on December 19, 2019, the Defendant told his probation officer that he would be staying with his sister and provided his new address and contact information. Ms. Brooks said that later a probation officer was unable to find the Defendant at his sister's address. Ms. Brooks said that on February 26, 2020, the officer made "several" unsuccessful attempts to contact the Defendant by telephone. Ms. Brooks stated that the officer spoke with the Defendant's sister on April 23, 2020, and that the Defendant's sister confirmed the Defendant lived with her. The Defendant called the officer later that day. Ms. Brooks said that the probation officer instructed the Defendant to be available for a home visit on April 27, 2020, that the Defendant was not at the home on this day, and that no one in the probation office had seen or heard from the Defendant since April 23, 2020. Ms. Brooks said that a probation violation warrant issued and that the Defendant absconded for the next three years, until his arrest. Ms. Brooks stated that the Defendant violated the terms of his probation by failing to be present for a home visit.

On cross-examination, Ms. Brooks acknowledged that the probation violation affidavit and warrant did not charge the Defendant with absconding. Ms. Brooks stated that although any contact between a probation officer and the Defendant should be contained in the violation report, it was possible an officer did not make a notation. Ms. Brooks agreed that the first probation violation was resolved in December 2019, at which time the Defendant was ordered to serve ninety days in confinement before being reinstated

to probation. Ms. Brooks stated that the current probation violation warrant charged the Defendant with missing home visits.

At this point in the hearing, defense counsel noted that the Defendant had been charged with failing to be present for a home visit and not for absconding. In response, the State indicated that it could request an additional probation violation warrant for absconding, if necessary. Without specifically addressing the notice issue, the trial court proceeded with the hearing. Defense counsel made no additional objections or arguments, and the Defendant did not raise the issue of notice of his absconding in this appeal.

The Defendant testified that he was living with his sister and missed the home visits because of work-related obligations. He stated that he had been present for some home visits and that he was aware of his missing only the April 2020 home visit. The Defendant said he performed construction work, mowed yards, and worked as a mechanic.

The Defendant testified that he did not contact his probation officer after missing the April home visit because, "[he] figured [he] did have a [w]arrant and plus COVID and stuff was going on from what [he] hear[d] they was turning people away." He said that he was not "hiding" from probation officers and that he was "at [his sister's] home if they wanted [him.]" He said that he was not charged with any new offenses and that, if he received probation, he "wouldn't mess up again."

On cross-examination, the Defendant testified that probation officers made home visits every couple of months. He said some visits were announced by a telephone call only hours before and others were scheduled several days in advance. He said that he had also reported in person to the probation office once or twice a month. The Defendant stated that he had returned the probation officer's calls, although the officer's notes did not reflect this fact. He acknowledged that an officer told him to expect a home visit on April 27, 2020, and that he told the officer he would be at work and unable to be home. The Defendant acknowledged that there was no record of his contacting any probation officer after April 2020 until his arrest in April 2023 and that he chose not to report during that time.

The trial court determined that the Defendant violated the conditions of his probation by failing to be present for a home visit. The court found that the Defendant was aware of the home visit on April 27, 2020, that he failed to be present or contact a probation officer, and that he made "no effort whatsoever to report" for probation after that time. The court further found that the Defendant absconded from supervision when he failed to report to his probation officer for three years because he assumed a probation violation warrant had been issued. The court commended the Defendant for maintaining employment but noted that the "most basic rule is that you have to report." The court found that confinement was necessary to avoid rewarding the Defendant for "laying low until the expiration date

of his sentence" and, as a result, ordered the Defendant to serve his original two-year sentence in confinement. This appeal followed.

The Defendant contends that (1) the trial court erred by concluding he absconded from supervision and (2) the court failed to consider the appropriate consequence for the violation pursuant to *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022). The State counters that the court considered all the appropriate factors and acted within its discretion. We agree with the State.

"On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *Id.* at 759. An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

Tennessee Code Annotated section 40-35-311 (Supp. 2023) classifies violations into "technical" and "non-technical" violations. A technical violation "means an act that violates the terms or conditions of probation but does not constitute a new felony, new Class A misdemeanor, zero tolerance violation . . . absconding, or contacting the defendant's victim in violation of a condition of probation." *Id.* -311(g). If the trial judge finds, by a preponderance of the evidence, that the defendant has committed a non-technical violation such as absconding, then the trial judge may revoke the defendant's probation. *Id.* -311(e)(2). The graduated punishments for technical violations apply to court determinations made on or after July 1, 2021, but do not apply to non-technical violations. *See* 2021 Tenn. Pub. Acts ch. 409 § 27 (eff. July 1, 2021); *see also* 2022 Tenn. Pub. Acts ch. 1060 § 10 (eff. July 1, 2022).

If the trial court failed to memorialize its reasons for the revocation decision on the record, the appellate court may either conduct a de novo review, provided the record is developed sufficiently for such review, or it may remand the case to the trial court with instructions to make appropriate findings. *Dagnan*, 641 S.W.3d at 759.

When a trial court determines that a defendant's probation must be revoked, the court must then decide upon an appropriate consequence. *Id.* at 757. A separate hearing is not required, but the court must address the issue on the record in order for its decision

to be afforded the abuse of discretion with a presumption of reasonableness standard on appeal. *Id*. at 757-58.

After revoking a defendant's probation on a non-technical violation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than one year upon making additional findings, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c) (Supp. 2021), -310 (Supp. 2021), -311(e)(2). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965)).

The Defendant contends that the evidence is insufficient to establish that the Defendant absconded from supervision. The Defendant does not contest that he failed to be present for a home visit and, thus, violated a term of his probation. Specifically, the Defendant asserts that there is a distinction between "absconding" and "failing to report" based upon Tennessee Code Annotated section 40-35-311 and that only a violation for absconding—a non-technical violation—would subject him to revocation. The State argues that the statutory distinction between technical and non-technical violations is inapplicable because that statute was not in effect at the time of the Defendant's underlying offenses.

A trial court's application of the probation violation framework contained in Tennessee Code Annotated section 40-35-311 is distinguishable from a court's application of sentencing laws, where the court must apply the sentencing law in effect at the time of the underlying offenses. *See State v. Saint*, 284 S.W.3d 340, 347 (Tenn. Crim. App. 2008) ("[T]he sentencing law in effect at the time of the offenses was the proper framework for establishing the defendant's sentences."). Therefore, the court's probation violation determination must be consistent with section 40-35-311, which was in effect at the time of the court's violation determination. *See State v. Jordan Isaiah Mosby*, No. M2022-01070-CCA-R3-CD, 2024 WL 380100, at *5 (Tenn. Crim. App. Feb. 1, 2024) (where the underlying offense was committed in 2013, the trial court must follow the dictates of T.C.A. § 40-35-311(e)(2) in revoking the defendant's probation and ordering him to serve the remainder of his sentence in incarceration); *State v. Gregory L. Nelson,* No. M2023-00311-CCA-R3-CD, 2023 WL 6843541, at *5 (Tenn. Crim. App. Oct. 17, 2023) (even though the underlying offense was committed in 2018, the trial court must follow the current dictates of T.C.A. § 40-35-311(e)(2) in revoking the defendant's probation and ordering him to serve the remainder of his sentence in incarceration). *But see State v. John Butler*, No. W2023-00566-CCA-R3-CD, 2023 WL 8234319 (Tenn. Crim. App. Nov. 28, 2023) (where the trial court held a revocation of judicial diversion hearing in 2023, this court found that the trial court, when sentencing the Defendant, should have applied the

probation revocation statute in effect at the time of the underlying offenses and not the provisions of T.C.A. § 40-35-311, which took effect July 1, 2021). In the present case, the court found by a preponderance of the evidence that the Defendant had absconded. Pursuant to section 40-35-311, absconding constitutes a non-technical probation violation for which the court can revoke the Defendant's probation and order him to serve the remainder of his sentence in confinement.

"Absconding" is not defined in the Tennessee Criminal Sentencing Reform Act of 1989. *See* T.C.A. § 40-35-101 *et seq.* However, this court has defined "abscond" as "[t]o go in a clandestine manner out of the jurisdiction of the courts, or to lie concealed, in order to avoid their process. To hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process." *State v. Fredrick Munn*, No. W2022-00675-CCA-R3-CD, 2023 WL 2607676, at *4 (Tenn. Crim. App. Mar. 23, 2023) (citation omitted). At the probation violation hearing, the Defendant acknowledged that he intentionally failed to report to or contact his probation officer in order to avoid being served with a probation violation warrant. Although the Defendant testified that he was "not necessarily" hiding from probation, the Defendant never reported to the probation office or made any effort to contact his probation officer for three years after failing to be present for a home visit in April 2020. As a result, the trial court found, by a preponderance of the evidence, that the Defendant absconded from supervision. The court did not abuse its discretion in this regard.

The Defendant also contends that the trial court failed to consider the appropriate consequence for the violation and failed to place sufficient findings on the record to support its decision ordering him to serve his sentence in custody. *See Dagnan*, 641 S.W.3d at 757. The State argues that the record supports the court's decision. We agree with the State.

In support of his argument, the Defendant relies on *State v. Arthur M. Stewart*, No. M2021-00595-CCA-R3-CD, 2022 WL 1236982 (Tenn. Crim. App. Apr. 27, 2022), in which the defendant admitted that he had violated the terms of his probation and that he had submitted a falsified doctor's note to the court. The trial court found the defendant evidenced a "level of deviousness" and revoked the defendant's probation stating that, "Sir, I just can't have folks submitting false medical documents. I just can't do it. I'm going to have to revoke you. Sentence to serve." *Arthur M. Stewart,* 2022 WL 1236982, at *2. On appeal, the defendant contended that the trial court failed to consider the appropriate consequence upon revocation, specifically alternative forms of punishment and the interests of justice. *Id.* at *3. This court concluded that

> [t]he trial court was clearly concerned with the severity of the defendant's deception in submitting a false medical document. However, from the record before us, we cannot determine whether the trial court took any other considerations into its calculus or whether the trial court, even implicitly,

considered the consequence imposed for the violation as a separate discretionary decision. We, therefore, remand for the trial court to place its reasoning for the consequence imposed on the record.

*Id.* (citations omitted).

In the present case, the record reflects the trial court's considerations regarding revocation. The supreme court in *Dagnan* noted that "relevant considerations [regarding the consequence of the revocation] might be, but are certainly not limited to, the types of things the trial court considered in this case: the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." 641 S.W.3d at 759 n.5. Here, the court heard testimony regarding the Defendant's probation history, including his past revocation. The court considered the Defendant's conduct and stated on the record that after the Defendant's failure to be present for a home visit, he made "no effort whatsoever to report" and, instead, "laid low," fearing arrest.

The record reflects that the trial court conducted an appropriate review of the facts and circumstances of the Defendant's case, and we afford the court's decision the presumption of reasonableness, in view of its having made sufficient findings on the record. The court considered the Defendant's prior violation, his missing two home visits, and his failure to report for three years in ordering him to serve the remainder of his sentence as a consequence of his violation. The court did not abuse its discretion in revoking the Defendant's probation and ordering him to serve the remainder of his original sentence in confinement. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE